UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
RACHEL CAROL FILSOOF,

                       Plaintiff,

      - against-

ANDREW J. COLE,

                   Defendant.
----------------------------------------------------------------x

**VERIFIED COMPLAINT
and Jury Demand**

      Plaintiff RACHEL CAROL FILSOOF (hereinafter "RACHEL") as and for her complaint against the defendant ANDREW J. COLE (hereinafter "COLE") alleges as follows:

## INTRODUCTION

1. Rachel is the victim of an ongoing program and policy of assault, violence, disparagement, intimidation, bullying and fear instituted by the Defendant COLE.  Mr. Cole's vicious and malicious attacks upon Rachel were highlighted by his December 3, 2020 imprisonment of her for 9 hours in a cabin in the hills of California.  During the 9-hour episode, Cole threatened Rachel with a knife, threw her into walls and on the floor, confiscated her telephone, threatened to kill her and her puppy dog, and dragged her by her legs from a car that she was attempting to use to escape, her head hitting the ground as he pulled her out of the car.  Following the December 3 attack, Cole has stalked, harassed and hounded Rachel in an effort to dissuade her from conveying information about his attacks.  Rachel, an accomplished and rising musician was informed that Cole contacted her business connections, photographers, co-writers, sponsors, and collaborators in an effort to disrupt her business relations with them for no other purpose than to cause Rachel conscious harm and fear.

**PARTIES**

2.  RACHEL was and is an individual residing in the State of New York, County of New York.

3.  At all times relevant hereto, defendant  COLE was and is an individual residing the State of California, County of Los Angeles.

4.  At all times relevant hereto, Rachel was and is a citizen of the State of New York.

5.  At all times relevant hereto, Cole was and is a citizen of the State of California.

**JURISDICTION and VENUE**

6.  Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332 as the plaintiff is a citizen of a different state than Andrew and the amount in controversy exclusive of interest and costs exceeds $75,000.00.

7.  Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 because a substantial portion of the events giving rise to the asserted claims have occurred, and continue to occur, within this district and much of the damage to Plaintiff and continues to occur in this judicial district where Plaintiff resides.

8.  Defendant is present in the State.

9.  Upon information and belief, Defendant transacts business within the State.

10. Defendant committed tortious acts inside the State.

11. Defendant committed a tortious act outside the state causing injury inside the State.

12. Defendant derived and derives substantial revenue from New York residents.

13. At all times material hereto, upon information and belief Defendant derived substantial revenue from interstate commerce.

14. Upon information and belief, Cole, regularly does or solicits business and engages in a persistent course of conduct in the State.

15. Upon information and belief, Cole, derives substantial revenue from goods and services used and consumed in the State.

16. Upon information and belief, Defendant regularly has solicited and solicits business from New York residents.

17. Upon information and belief, Defendant promotes his services online and thru the internet to customers, agents, collaborators and producers in New York and nationwide.

18. Upon information and belief, Defendant engaged and engages in interstate commerce.

19. As a result of Defendant's tortious acts, Plaintiff has suffered and is suffering injury in the State including but not limited to loss of business, business opportunities, reputation, emotional distress.

20. At all times relevant hereto, Defendant expected or should have reasonably expected his actions to have consequences in New York.

## FACTUAL ALLEGATIONS

21. At all times relevant hereto, Rachel was and is a singer, songwriter, musician, actor, dancer and performer.

22. Rachel's contacts, connections, and relationships with producers, agents, photographers, songwriters, record labels, advertising companies, sponsors, and collaborators is critical to the success of Rachel's business.

23. Defendant Cole is a record producer, business owner, promotional agent and musician.

24. Cole's attacks upon Rachel included incidents in New York, Georgia and California.

25. On August 7, 2019, at 10 West Street, County of New York, City and State of New York, at approximately 12 Midnight, Defendant Cole violently grabbed Rachel's arm and violently thrust her onto a couch and held her there while he whispered beratements into her ear.

26. At said time and place, Rachel was in fear and was trembling following Cole's physical attack on her.

27. Cole's ongoing bullying and intimidation of Rachel included continuous verbal abuse while in person, through the telephone and text messaging while Rachel was in New York, Atlanta, Georgia and California.

28. On or about August 21, 2019 at approximately 11 p.m. outside 2255 22nd Street in Santa Monica, California. 2255 22nd Street, Cole grabbed Rachel and violently thrust her onto the concrete causing her to sprain her arm.

29. Rachel sought medical attention following the August 21, 2019 attack and was placed in an arm splint in the morning of August 22, 2019.

30. Rachel attended a TV interview on August 22, 2019, with her arm in a splint speaking about anti-bullying.  Andrew Cole also attended the same interview with Rachel despite having bullied and harmed Rachel multiple times, including the day before the interview.

31. On or about January 1, 2020, at approximately 2 a.m., in Atlanta, Georgia, at 3435 Kingsboro Rd, NE, Cole confronted Rachel and put his hands around her throat and thrust her into a wall.  That day Rachel attempted to find out what was happening and wrote messages to Cole asking him why he hurt her saying for example "it gets further each time", "you hurt me".

32. On December 2 and 3 2020, Cole imprisoned Rachel at a cabin located at 2558 Varden Ct., Mariposa, California  95338 (hereinafter "Dylan Cabin") and spent 9 hours physically assaulting Rachel, throwing her into doors and floors and preventing her from leaving the cabin.

33. On said date at the Dylan Cabin while Rachel was his prisoner, Cole held a 10 inch butcher knife to Rachel's throat and stomach and threatened to kill her.   Cole repeated throughout the ordeal that nobody could stop him from killing her and that he was also going to kill her puppy dog.

34. On December 3, 2020, Rachel was able to obtain possession of her telephone and dial her mother's phone number so that her mother could hear some of what was happening.

35. At that point, Rachel's mother, Terasa Filsoof, called 911 and was eventually connected to the Sheriff's Department of Mariposa County who responded to the location at Dylan Cabin and rescued Rachel.

36. As a result of Cole's attack at Dylan Cabin, Rachel suffered lacerations and severe bruising on her face, lip, hands and arms and extreme emotional distress.

37. Cole was arrested on December 3, 2020 and upon information and belief was served with a 10 day restraining order.

38. Rachel flew back to California for work and on or about December 22, 2020, at approximately midnight, Cole appeared out of nowhere at the Sunset Marquis Hotel where Rachel was staying in Los Angeles, California.

39. At that time and location, Cole advised Rachel that he had been watching her and that she could not escape him. He relentlessly sought to convince Rachel not to inform others of his actions and not to testify against him, repeating over and over "you don't want me to get into trouble do you"? while handing her gifts.

40. On December 28, 2020, Cole contacted Rachel electronically to inform her that he knows what she is doing all the time saying "I see everything".

41. On January 1, 2021, Rachel attempted again to stop Cole from contacting her by sending him a long email demanding that he stop.

42. On January 10, 2021, Cole posted a picture of himself outside Rachel's NYC apartment in an effort to show Rachel that he knew where she lived and he could not escape him.

43. On January 11, 2021, well after Rachel demanded that Cole cease contacting her, Cole emailed Rachel (two weeks before Cole's scheduled appearance in Mariposa County Criminal Court) requesting *inter alia* "I am asking you quietly and without hatred to have a talk with me...for a brighter tomorrow".

44. The December 28, 2020, January 10 and 11, 2021 actions by Cole were in furtherance of his attempt to inflict greater emotional distress upon Rachel and influence her decisions to seek justice for his misconduct.

## <u>COUNT I - BATTERY</u>

45. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 – 44 above as though fully set forth at length herein.

46. On August 7, 2019, at 10 West Street, New York, New York, 30th Floor, the Defendant Andrew Cole forcibly grabbed the Plaintiff Rachel by t he arm and pushed her.

47. On August 21, 2019, Cole forcibly pushed Rachel to the concrete floor in Santa Monica, California.

48. As a result of being pushed to the concrete and Rachel's violent contact with the concrete, Rachel suffered a sprained arm.

49. On December 3, 2020, Cole forcibly thrust Rachel into walls and floors inside the Dylan Cabin.

50. As a result of the physical contact in the Dylan Cabin, Rachel suffered lacerations on her arms, wrists, and face.

51. Rachel suffered personal injuries as a result of Cole's battery.

52. Cole intended to make contact with Rachel during the batteries that occurred on August 7, 2019, August 21, 2019, December 2, 2020 and December 3, 2020.

53. All of the aforesaid contact was without the permission or consent of Rachel.

54. The August 7, 2019 contact was intended by Cole to cause harm to Rachel.

55. The August 21, 2019 contact was intended by Cole to cause harm to Rachel.

56. The December 2, 2020 contact was intended by Cole to cause harm to Rachel.

57. The December 3, 2020 contact was intended by Cole to cause harm to Rachel.

58. Cole committed a battery upon Rachel on August 7, 2019.

59. Cole committed a battery upon Rachel on August 21, 2019.

60. Cole committed a battery upon Rachel on January 1, 2020.

61. Cole committed a battery upon Rachel on December 2, 2020.

62. Cole committed a battery upon Rachel on December 3, 2020.

63. Due to the COVID-19 Pandemic, and pursuant to Executive Order 202.67, *et.seq.*, the time within which claims may have been brought was tolled from March 7, 2020 to November 3, 2020.  The 228 days tolling renders timely all causes of action with a one year statute of limitations arising out of the August 7, 2019, August 21, 2019 and January 1, 2020 occurrences.

64. In addition to compensatory damages for pain and suffering caused by Cole's actions, Cole's aforementioned conduct was intentional, deliberate, and so outrageous that an award of punitive damages is necessary to vindicate the rights of the plaintiff and public and deter the commission of similar acts of violence in the community.

### COUNT II - FALSE IMPRISONMENT

65. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 - 64 above as though fully set forth at length herein.

66. For 9 hours in the evening of December 2, 2020 into the morning hours of December 3, 2020, Rachel was falsely imprisoned by Cole in the Dylan Cabin.

67. During the aforesaid time, Cole prevented Rachel from leaving the Dylan Cabin.

68. During the aforesaid time on December 2-December 3, Rachel attempted on numerous occasions to leave the Dylan Cabin and was stopped by Andrew Cole.

69. Cole falsely imprisoned Rachel during the aforesaid time in the Dylan Cabin on December 2-December 3, 2020. As a direct and proximate result of Cole's conduct, Rachel experienced pain, suffering and emotional distress.

70. Cole's aforementioned conduct was intentional, deliberate, and so outrageous that an award of punitive damages is necessary to vindicate the rights of the plaintiff and the public and deter the commission of similar acts of violence in the community.

## COUNT III - ASSAULT

71. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 - 70 above as though fully set forth at length herein.

72. At the aforesaid times and places Cole caused Rachel to experience a severe and imminent apprehension of physical contact.

73. Cole caused Rachel to experience a severe and imminent apprehension of physical contact on August 7, 2019, August 21, 2019, January 1, 2020, December 2, 2020 and December 3, 2020.

74. It was Cole's intention to cause Rachel to experience apprehension of physical contact on each of the four dates set forth above.

75. Cole came into unlawful contact with Rachel on each of the four dates at the approximate times and locations set forth herein.

76. Cole committed an assault upon Rachel on August 7, 2019, August 21, 2019, January 1, 2020, December 2, 2020, and December 3, 2020.

77. Cole's aforementioned conduct was intentional, deliberate, and so outrageous that an award of punitive damages is necessary to vindicate the rights of the public and deter the commission of similar acts of violence in the community.

## COUNT IV - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

78. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 - 77 above as though fully set forth at length herein.

79. Cole intended to and did cause Rachel emotional distress due to each of the assault, battery and false imprisonment that occurred on August 7, 2019, August 21, 2019, January 1, 2020, December 2, 2020, and December 3, 2020 as a direct and proximate result of the violence perpetrated upon Rachel.

80. Since at least August of 2019, Cole instituted a campaign of continuous verbal abuse against Rachel that he intended to cause and did cause Rachel severe emotional distress.

81. Cole's infliction of emotional distress was accomplished not only by the violent acts, false imprisonment and threats to kill her and her dog, but by Cole's constant warnings to Rachel that he was watching her, knew her every move and would kill anyone that she became close to.

82. Cole's actions went beyond the bounds of human decency, were utterly outrageous and cannot be allowed in a civilized society.

83. Cole used the illness and ultimate death of Rachel's beloved father Fred Filsoof as a weapon against her which Cole was intimately aware would crush Rachel emotionally due to her whole hearted love and adoration of her father.

84. As a direct and proximate result of Cole's violent actions that occurred on December 2 and 3 of 2020, Rachel experienced depression, crying episodes, inability to sleep and function normally in the day, and was forced to seek medical attention for Post Traumatic Stress Disorder.

85. In addition to compensatory damages for intentional infliction of emotional distress, Cole's aforementioned conduct was intentional, deliberate, and so outrageous that an award of punitive damages is necessary to vindicate the rights of the public and deter the commission of similar acts of violence in the community.

### COUNT V– Interference with Prospective Economic Relations

86. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 – 85 above as though fully set forth at length herein.

87. On or about the second week of March 2020 and thereafter, Cole disparaged Rachel to Curtis Martin of Sixlight Productions, a producer and co-writer, while Rachel was in New York and Curtis Martin was in Las Vegas.

88. Cole knew that Curtis was important to Rachel as he was her producer and co-writer and set out to harm the relationship.

89. It was important to Rachel to have the assistance of Curtis Martin to help co-write Rachel's upcoming single.  Cole disrupted that relationship so that Curtis Martin did not produce or co-write with Rachel for the balance of 2020, which was directly caused by Cole's false statements to Curtis Martin which were made for no other reason but to harm Rachel.

90. In May of 2020 and thereafter, Cole contacted a business that was providing promotional opportunities for Rachel run by an individual named Ron Poisson from New York.  In an attempt to disparage Rachel, Cole asked Poisson not to book Rachel.

91. On or about December 12, 2020, Cole contacted Rachel's photographer Jen Rosenstein who Cole was very aware was slated to shoot Rachel later that month.

92. In an effort to prevent Rosenstein from photographing Rachel for upcoming professional shoots, Cole made false statements to Rosenstein.

93. Cole contacted multiple other business relations of Rachel in an effort to disrupt their relationships with Rachel and deter them from doing business with Rachel

94. Cole's campaign to interfere with Rachel's business relationships was designed to isolate her so that she would not have financial independence and as a result Cole would be able to further bully and manipulate Rachel and have ultimate control over her.

**WHEREFORE**, plaintiff seeks compensatory damages in the amount of $500,000 for Counts I through IV for pain, suffering and emotional distress, an amount to be determined at trial for compensatory damages on Count V, punitive damages in an amount of $1,000,000 for Counts I through V (for a total of $1,500,000) and an injunction prohibiting Defendant Cole from contacting her and/or interfering with Rachel's business relations along with interest, costs and attorney's fees, as allowed by law.

Dated: March 1, 2021

THE BOSTANY LAW FIRM PLLC


By:     s/Samantha B. Welborne
         John P. Bostany
         Attorneys for Plaintiff
         3 World Financial Center, 24th Floor
         New York, New York 10281
         (212) 530-4400
         mail@bozlaw.com

## VERIFICATION

STATE OF NEW YORK )
                        ) ss.:
COUNTY OF NEW YORK )

Rachel Carol Filsoof, being duly sworn deposes and says:

1.    I am the plaintiff in this action.

2.    I have read the Complaint and know the contents thereof. The same is true to my

knowledge except as to the matters stated to be alleged on information and belief

and as to those matters I believe them to be true.

*signature*

Sworn to before me this
1ˢᵗ day of March 2021

Notary Public

John P. Bostany
Notary Public, State of New York
No. 02BO6072358
Qualified in Kings County
Commission Exp. Jan. 27, __