UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RACHEL CAROL FILSOOF,<br><br>                              Plaintiff,<br><br>-against-<br><br>ANDREW J. COLE,<br><br>                              Defendant. | Docket No: 21CV1791(NRB) |

# MEMORANDUM OF LAW IN
# SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER PRELIMINARY INJUNCTION AND EMAIL SERVICE

## PRELIMINARY STATEMENT

Plaintiff Rachel Carol Filsoof ("Rachel") brings this motion by order to show cause as her rights are in immediate jeopardy of being disrupted, removed and diminished by Defendant Andrew J. Cole's (hereinafter "Cole") intimidation, threats, disparagement and interference with Rachel's business relations. Plaintiff seeks an *ex parte* TRO for the portion of the relief sought that is most likely to subject Rachel to harm Rachel and is far more effective if the Defendant becomes temporarily restrained from harming the Plaintiff upon his notice of this proceeding.

## STATEMENT OF FACTS

Rachel started her music career at the age of 12, opening the US Open with the National Anthem. She went on to becoming a talented singer and musician, performing internationally and the author of dozens of popular song tracks and music videos.

Rachel was the victim of domestic violence at the hands of the Defendant Cole. The relationship came to a screeching halt on December 3, 2020, when Cole isolated Rachel in a cabin in the mountains of Central California for a period of approximately 9 hours of multiple

assaults, batteries, and false imprisonment.  Following his arrest by the Mariposa County California Sheriff's Department on December 3, 2020, a Mariposa County judge signed a 10-day emergency restraining order to expire on December 13, 2020.  Shortly thereafter, Cole began harassing/stalking Rachel.  After Rachel returned to California for recording sessions, Cole suddenly appeared without warning at her hotel in Los Angeles.  He spent considerable time attempting to persuade Rachel not to cooperate with the police investigation against him.  Rachel considered Cole's offer, his pleas for forgiveness, his showering her with gifts, and promises that the assaults that he committed against her in the past, including the imprisonment and vicious attacks on December 3 would cease.  Rachel mustered up the strength to again block Cole and formally demand again in a January 1, 2021 email communication that he completely stay away from her.

      Rachel was informed that following the December 3 attack, in addition to Cole's efforts to prevent Rachel from cooperating with the police investigation, Cole attempted to disrupt Rachel's relationships with her collaborators, sponsors, photographers and other business relations.  Photographers are critically essential to the success of those in the entertainment world.

      When Cole discovered that Rachel had a photo shoot planned for mid December 2020 with a popular Hollywood photographer Jen Rosenstein, Cole attempted to reach Rosenstein first.  On or about December 13, 2020, Cole, after sending multiple messages to Rosenstein urging her to speak with him, was able to get Rosenstein on the telephone.  In an attempt to prevent Rachel from having her first shoot with Rosenstein that week, Cole misrepresented to Rosenstein that Rachel attempted to kill him.  He sought to persuade Rosenstein that Rachel was dangerous in an obvious attempt to cause Rosenstein to cancel the shoot with Rachel and disrupt

Rachel's relationship with Rosenstein.  *See* accompanying Declaration of Jen Rosenstein dated March 5, 2021.

Cole's capacity and likelihood that he will continue to seek to disrupt Rachel's relationships unless enjoined, is underscored by his escalating threats and intimidation of Rachel in the past several weeks, following a renewed restraining order issued by the Mariposa County State Court judge on February 1, 2021.  A copy of the California restraining order is respectfully annexed to the accompanying Declaration of Rachel Carol Filsoof as **Exhibit 1**.

The day after Rachel's return to New York on February 26, 2021, Cole flew to New York on February 27.  On March 2, 2021, Cole began posting on social media a continuous stream of threats, evidence of stalking and evidence of blatant violation of the California restraining order.

Cole is posting pictures of himself in front of or next to Rachel's home in Battery Park City, New York.  In one post on January 10, 2021, Cole posted a picture of himself standing 20 yards from the entrance to Rachel's apartment building.  A copy is annexed to the Declaration of Rachel Filsoof as **Exhibit 2**.  On March 2, 2021, Cole posted a picture of himself 172 yards from Rachel's home.  A copy of the picture is annexed to the Declaration of Jacob O'Sullivan as **Exhibit 7**.

Cole is apparently of the view that the California Criminal Court restraining order does not inhibit actions in New York. The Order requested here is similar to the California order as it is readily apparent that Cole will travel interstate in order to harass/stalk/intimidate Rachel.

Rachel now comes to this court for a restraining order preventing Cole from furthering his acts of intimidation, threats, and/or disruption of her business relations.

**ARGUMENT**

**POINT I:  PLAINTIFF IS ENTITLED TO IMMEDIATE INJUNCTIVE RELIEF**

It is settled law in this Circuit that a preliminary injunction is appropriate upon a showing of (1) irreparable injury combined with (2) either (a) a probability of success on the merits or (b) an issue that is fair ground for litigation with a balance of hardships tipping in the movant's favor.  Fisher Price v. Well-Made Toy, MFG Corp., 25 F.3d 119, 122 (2d Cir. 1994); Hasbro Bradley, Inc. v. Sparkle Toys, Inc., 780 F.2d 189, 192 (2d Cir. 1985); Le Sportsac, Inc. v. K Mart Corp., 754 F.2d 71, 74 (2d Cir. 1985); Hearst Business Pub., Inc. v. W.G. Nichols, Inc. 76 F. Supp. 2d 459, 467 (S.D.N.Y. 1999).  In this case, Plaintiff is clearly entitled to a preliminary injunction because she is in immediate danger of irreversible harm and is likely to succeed on the merits at trial.

> The standards for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 ... are identical." Sterling v. Deutsche Bank Nat'l Tr. Co. as Trs. for Femit Tr. 2006-FF6, 368 F. Supp. 3d 723, 726 (S.D.N.Y. 2019) (quoting Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd., 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002)). . . . The showing of irreparable harm "is the single most important prerequisite ...." LSSi Data Corp. v. Time Warner Cable, Inc., 892 F. Supp. 2d 489, 501 (S.D.N.Y. 2012) (internal quotation marks omitted). To demonstrate irreparable harm, the movant must show "an injury that is neither remote nor speculative, but actual and imminent." Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1999) (internal quotation marks omitted). The movant must further show that the injury "cannot be remedied by an award of monetary damages.

*Nat'l Coal. on Black Civic Participation v. Wohl*, (Marrero, D.J.), 2020 WL 6305325, at *6 (S.D.N.Y.) *appeal withdrawn sub nom*. 2020 WL 8366993 (2d Cir. 2020).

**A.     STANDING**

To demonstrate that Article III's standing requirements are met, a plaintiff must show that:

"(1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will

be redressed by a favorable decision." *Id. citing* <u>Friends of the Earth v. Laidlaw Envtl. Servs.</u>, 528 U.S. 167, 181–82 (2000).

> The injury-in-fact requirement is meant to "ensure that the plaintiff has a personal stake in the outcome of the controversy." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014) (internal quotation marks and citation omitted). A "future injury" can suffice, if it is "certainly impending, or there is a substantial risk that the harm will occur." Id. at 157, 134 S.Ct. 2334; see Clapper, 568 U.S. at 414 n.5, 133 S.Ct. 1138 (explaining that plaintiffs need not "demonstrate that it is literally certain that the harms they identify will come about"); Dep't of Commerce v. U.S. House of Representatives, 525 U.S. 316, 332-33, 119 S.Ct. 765, 142 L.Ed.2d 797 (1999) (finding standing when certain jurisdictions were "substantially likely ... [to] suffer vote dilution" (internal quotation marks and citation omitted)).

*Nat'l Coal. on Black Civic Participation v. Wohl*, *supra*.

Plaintiff has suffered an actual physical injury, is suffering on going emotional distress, and is in jeopardy of harm both physical, emotional and economic and it is likely that unless enjoined by this Honorable Court, Cole will continue his intentional infliction of emotional distress upon the Plaintiff and continue to attempt to interfere with her business relations.

**B.     IRREPARABLE HARM**

Continuing infliction of emotional distress upon Rachel will cause lasting effects that can be stopped by the issuance of this TRO.  It is axiomatic that emotional scars do not heal in the same manner as a minor physical wound.  Protecting Rachel from harm is a proper use of the Court's considerable powers to issue a TRO under these circumstances.

Following the entry of a restraining order by the California Criminal Court judge [Exhibit 1 to Declaration of Rachel Carol Filsoof], Cole followed Rachel to New York and has been posting pictures of himself in locations surrounding Rachel's place of residence for the specific purpose of intimidating and frightening her.  Cole he has caused and is continuing to cause Rachel

emotional distress to accomplish the sinister and malicious purpose of taking control over Rachel and preventing her from testifying in the pending Criminal Court case in California.

Cole's showing up at Rachel's hotel and posting of himself near Rachel's New York home and in addition his adding to those posts such words as "Knives Out" on March 8, 2021 places Rachel in fear of further violence. Cole has no constitutionally protected right to intimidate and this Court's prohibition of intimidation is a logical and sensible remedy for Cole's acts.

"With regard to intimidation, the Court explained that "[i]ntimidation in the constitutionally proscribable sense of the word is a type of true threat" that exists "where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." Id. at 360, 123 S.Ct. 1536. Prohibition of true threats is appropriate, the Court reasoned, because it "protects individuals from the fear of violence and the disruption that fear engenders, as well as from the possibility that the threatened violence will occur." Id. (citations omitted)." *Nat'l Coal. on Black Civic Participation v. Wohl*, supra.

Pursuant to the " 'whole code' canon," "courts construe terms across different" acts or titles of a legal code "consistently". *United States v. Harmon*, 474 F.Supp.3d 76 (D.D.C. 2020) (*citing K.L. v. R.I. Bd. of Educ.*, 907 F.3d 639, 646 (1st Cir. 2018).

"[T]hreats, intimidation or coercion may take on many forms." Beaty, 288 F.2d at 654. There is no requirement -- in the statutory text or the case law -- that intimidation be violent or physical. Cf. People Helpers Found., Inc., 781 F. Supp. at 1135 (explaining that "even if the acts of the [defendants] were not violent or illegal per se, they may still have constituted interference, intimidation, or coercion under [the FHA]").

Defendant's use of Rachel's confidential business contacts and disparaging remarks to her business relations each independently cause irreparable harm.

"With respect to commercial torts, the Court of Appeals for the Second Circuit has held that losses that are difficult to quantify can constitute irreparable harm". *Xelus, Inc. v. Servigistics, Inc.*, 371 F. Supp. 2d 387, 389 (W.D.N.Y. 2005) *citing Gerard et al. v. Almouli*, 746 F.2d 936, 939 (2d Cir.1984).

> In addition, the Second Circuit has recognized that damage to one's business reputation and loss of customer goodwill can constitute irreparable harm. *See, e.g., Register.Com, Inc. v. Verio, Inc.,* 356 F.3d 393, 404 (2d Cir.2004) ( "the district court did not abuse its discretion in finding that, unless specific relief were granted, Verio's actions would cause Register irreparable harm through loss of reputation, good will, and business opportunities"); *see also TVT Records v. Island Def Jam Music,* 225 F.Supp.2d 398, 405 (S.D.N.Y.2002) ("Beyond losses, the Second Circuit regards damage to business relationships significant") (citing *Reuters,* 903 F.2d at 907–909).

*Xelus, Inc. v. Servigistics, Inc.*, *supra* at 390.

"Servigistics' alleged disparaging comments about Xelus could certainly cause such damage." *Id. See also, National Elevator Cab & Door Corp. v. H & B, Inc.,* 2008 WL 207843 (E.D.N.Y. 2008)(victim "need not wait until its relationships….are damaged before seeking an injunction.")

C.     **Rachel is likely to succeed on the merits**

"[M]ovant need not show that success is an absolute certainty. It need only be shown that the probability of the movant prevailing is better than fifty percent." *Flexible Technologies, Inc. v. World Tubin Corp.*, 910 F.Supp. 109 (E.D.N.Y. 1996)(Dearie, D.J.).

Under New York law, a "civil 'assault' is the intentional placing of another in apprehension of imminent harmful or offensive contact. The elements of a civil 'battery' are (1) bodily contact,

which is (2) harmful or offensive in nature, and (3) made with intent." *Doe v. Alsaud*, 224 F. Supp. 3d 286, 294 (S.D.N.Y. 2016).

In New York, a cause of action for intentional infliction of emotional distress ("IIED") "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Doe v. Alsaud*, *supra.*

The standard is satisfied "when there is a deliberate and malicious campaign of harassment or intimidation." *Scollar v. City of New York*, 160 A.D.3d 140, 74 N.Y.S.3d 173, 178 (1st Dep't 2018) (internal quotations omitted). "[W]here severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation, IIED provides a remedy." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122–23 (2d Cir. 2019).

The Defendant Cole has demonstrated a clear pattern of harassment and intimidation designed to frighten Rachel into not cooperating with law enforcement with respect to charges relating to his assaults upon her. The infliction of emotional distress upon Rachel is an integral part of Defendant's acts in for example (a) showing up at her hotel on December 23 (b) posting a photo outside her NY home on January 10 (c) flying to New York on February 27 (d) posting a photo 172 yards from her home on March 2 (e) posting a "knives out" photo in New York City on March 8, 2021 (f) posting a photo in front of Brookfield Place where her lawyer works on March 9, 2021.

This is a person that has a demonstrated capacity to physically harm Rachel and has told her that he can see her and find here wherever she is in order to have control over her. The campaign of harassment and intimidation is malicious and for no reason other than to cause

further distress to Rachel. [Verified Complaint and accompanying Declaration of Rachel Carol Filsoof.]

Under New York law, the elements of a claim for Tortious Interference with Prospective Economic Advantage are: "(1) a business relationship between the plaintiff and a third party; (2) defendant's knowledge of that relationship and intentional interference with it; (3) proof that the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the relationship". *Medacist Sols. Grp., LLC v. CareFusion Sols., LLC*, No. 19-CV-1309 (JMF), 2021 WL 293568, at *12 (S.D.N.Y. 2021) citing *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006).

To satisfy the first element Plaintiff need only show "a reasonable probability of entering into a business relationship with a third party" to satisfy this element, and the record allows a reasonable jury to infer the existence of such a probability." *Medacist Sols. Grp., LLC v. CareFusion Sols*, supra. citing *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 239 (S.D.N.Y. 2018).

The second and third elements are satisfied as Defendant's sole purpose in interfering with Rachel's business relationships was to cause her harm. [Verified Complaint and accompanying Declaration of Rachel Carol Filsoof.] "[A]plaintiff may show either that the defendant's conduct was for the sole purpose of inflicting intentional harm on the plaintiff or amounted to a crime or an independent tort." *Medacist Sols. Grp., LLC v. CareFusion Sols., LLC, supra.* citing *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004).

Defendant has already harmed multiple critically important business relationships to Rachel and he is in the active process of severing others. [Verified Complaint and accompanying Declaration of Rachel Carol Filsoof.]

Plaintiff is likely to succeed on the merits and the Restraining Order sought will protect Rachel from continuing acts that further the torts alleged in the interim.

D.     **BALANCE OF THE HARDSHIPS**

Enjoining Defendant from doing the acts requested here cannot be a hardship for Defendant has they are all tortious and against the public interest. Furthermore, Defendant cannot cite any reason why he would need to commit any of the acts sought to be enjoined.

### Point II: EMAIL SERVICE IS APPROPRIATE

"In cases where courts have approved of service by email, plaintiffs typically introduced evidence that (1) the email address is indisputably connected with the defendant, such as the defendant using the account to personally communicate with the plaintiff or publicly advertising that email address as a means to conduct official business with the defendant, and (2) the account is active and has been recently used. *Zanghi v. Ritella*, 2020 WL 6946512, at *2 (S.D.N.Y. Nov. 25, 2020)(Buchwald, D.J.)(String Citing).

Here Defendant uses the email address in an active site for his music business and as recently as March 3, 2021 advised an investigator that it is the best email address to reach him. *See* accompanying Declarations of Jacob O'Sullivan and Rachel Filsoof.

Moreover, where, as here, Defendant is traveling in New York City, email service is more likely to reach Defendant than leaving a copy at his California residence. We respectfully ask that Plaintiff be allowed to served Defendant by email with additional service either by overnight delivery or leaving a copy at Defendant's last known address 27 Aloha Dr. Pacific Palisades, CA 90272 set forth in paragraph 11 of the Declaration of Rachel Filsoof.

-11-

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that a TRO and preliminary injunction be granted and that email service be allowed.

Dated:   New York, New York
         March 12, 2021

                                                 Respectfully Submitted,
THE BOSTANY LAW FIRM, PLLC
By:_s/John P. Bostany
Attorneys for Plaintiff
3 World Trade Center - 24th Floor
New York, New York 10281
(212) 530-4400
john@bozlaw.com